Mr. Moran, you may proceed. Good morning. I'm John Moran here on behalf of Polar Electro, the famous parent of Polar Inc., the U.S. subsidiary. This morning, the important critical issue is what is not before the court. And what is not before the court is evidence of the rudimentary and basic inquiry of construing the claims and applying the claims to the accused product prior to bringing suit. That evidence is lacking in at least four separate areas. That is evidence of a means plus function claim analysis, evidence of a means plus function infringement analysis, evidence of investigation into whether the accused product used heart rate at rest, the parameter that the complaint and amended complaint both said was required of the product. And furthermore, what's missing before the court are the memoranda that Polar was denied access to before the district court. Do you think the trial court that witnessed all of these proceedings and was well versed in the activities of both parties and even saw records which aren't before this court, do you think it abused its discretion? Yes, Your Honor, in two ways. That's a pretty strong thing to say, that someone abuses their discretion. How did that happen here? In both the lack of evidence and the legal standards. Well, but the district judge did quite a little bit in telling us how they investigated the products and they construed the patent, and at one point they even narrowed their charges against your client to the own Cal system, from the new Cal system. It seems like it wasn't an instance of them going after you without basis. Well, that's our position, is that yes, there was going after us without, not us, but Polar Electro and Polar Ink. If we look at the evidence of record, we do have three declarations by Mr. Maynard that are sworn under pain of perjury. So we accept them as true, we must, until they're countermanded, right? So if Mr. Maynard testified, I'm looking at the third is the deposition, the declaration that came in in 2009. I interpreted the claim terms I believe were necessary to interpret. Clearly you have a means plus function patent, so that means he's saying I did that. I performed an infringement analysis, construed them, he goes on, you know, he tells you what he did. Now, you had the opportunity to depose Mr. Maynard. No, Your Honor, we requested it, but we're denied. But you're not telling us on appeal that that was error. You got schnooked a little bit because you said we'd like to depose Mr. Maynard and Mr. Rooklege if you're going to grant all of these supplemental papers coming into the record. And if you're not going to bring them in, then we don't want to depose him. And what the Supreme Court judges, he kept out Rooklege's declaration and Gooding's declaration and cementing, but he let in the third declaration. Most of the third. Yeah, most of the part that he let in. And you didn't pursue that. So from my perspective, I mean, if you put Maynard on the stand, you could have asked him a whole lot of questions about what he did, right? And he'd be under oath. You would find out whether what he had said, what he swore to, perjury is pretty serious stuff. But it's not necessary in this case because it was the burden at that point in time in the proceedings for the plaintiff to come forth and show that they had done the appropriate inquiry. All he says is, I looked at the claims. We don't know what he did, whether there's a means plus function. Well, we know in the record, for example, that Mr. Rooklege, very shortly after Mr. Maynard had done his original work, was writing letters to your client in which he's referring to the means for determining this and the means for determining that. So that would lead, certainly, that's evidence to show that somebody had recognized that this was a means plus function patent, right? I'm looking at the letters that were sent by Mr. Rooklege to the president of Polar. They're at A717 here in the record. He's saying, you know, we think that in your device, there are the means corresponding to the structure, yada, yada. That was in response to Polar's letter after the complaint was filed. This is when he's asking for a license. This is well before the complaint was filed. Mr. Rooklege is at A717. Mr. Rooklege is writing, saying, your products, you know, got these problems. The heart rate monitoring feature corresponds to the means for providing data indicative of the cardiac function of the user. Somebody over an hour had to think this was a means plus function claim. Couldn't have written that letter otherwise. He sent two of those looking. He sent the one I was looking at as the follow-up to the hearing. Mr. Maynard did not say that in his declaration. Under panelist perjury, he didn't say, I looked at these. I found, for example, the claims I believe were necessary. Let's assume for a moment that somebody recognized that these claims were means plus function. I find that hard to believe that nobody did. They're just two simple means. There is no evidence that there was a construction that says, okay, what is the first function? What is the second function? What is the structure that corresponds to that first function and that second? Well, my point was you had an opportunity to find that out. You could have put Mr. Maynard on the stand and really lit the fire under his seat because he's under oath. We had the opportunity and asked for it. And you were denied and you didn't complain. You didn't say to the judge, hey, wait a second, you can't let in the third declaration and not let me depose a fellow? That doesn't cure the deficiencies of the record, Your Honor, nor does it cure the deficiencies of Mr. Maynard's declaration, which should have said, I did this. There is no evidence. Yes, there is circumstantial evidence that somebody recognized that these were means plus function. All right? We'll take that for granted for a moment. But, again, there's no evidence of saying whether the black liberal law, what you do when you have means plus function claims, you interpreted what's the function? What structure performs that function? Moreover, in an infringement analysis, is there a correspondence between the structure and the patent? Well, now, look, let's also look at what's happened here that the Chief Judge certainly alluded to. We have the judge actually ordering Harry Simon to produce the two memoranda. Right? No. Harry offered to give them up, but as I read the record, the judge said, I order you to give them to me. The two, we'll call them two secret memoranda. Two secret memoranda. Now, the judge, in his opinion, said, I reviewed these two memoranda, and these two memoranda support what Mr. Maynard said in his declarations. I think that's a fair characterization. I think he said there was nothing in the secret memos that would change his opinion. Well, he's heard. I mean, the judge knows what the law is, right? The judge, you know, your black letter law that we have a means plus function claim. We don't have the evidence of showing that that was applied here. I understand what you're saying, but the simple fact is there is no evidence of the claim construction, and moreover, there's no evidence of a pre-infringement filing analysis for means plus function. And that's important. I refer you to, for example, the patent claims in a patent figure, A-17. I don't read your brief to be saying that the judge erred as a matter of law in looking at the two memos. The judge is free to look at the memos. Wait a minute. Let's go very slowly here. The judge was free to look at the two privileged memos. Yes, Your Honor. So that wasn't a violation of law for him to do that. No, Your Honor. And the judge, once he looked at the two memoranda, was the judge entitled to rely on something in the memoranda to support his decision? Not without disclosing those memoranda to us or to this court. Without those memoranda, this court cannot reasonably conclude that the claim construction was appropriately performed prior to filing suit. That's what the judge relied upon below. Well, unless we take the view that Mr. Maynard, who at the risk of going to jail for perjury in his first, second, and third declarations said, I did what was necessary. No, he didn't say what was necessary. By what I was espousing as a theory of the case is the burden then shifted to you to depose him. Two things. One, he didn't say I did what was necessary. He said I did a claim construction. I did analysis. He didn't say I applied, I found the first function, I found the second function, I found the structure. The structure is important. If you take a look at the patent, there are several pages of figures of the important structure here, none of which is discussed anywhere in the record. I see that my time. You're into your rebuttal time. Yes. If you'd like to save that, you may. Unless there's a question I'd like to answer. Thank you. We'll preserve your time, Mr. Moran. Mr. Ruclich. May it please the Court. Judge Carter's order denying Rule 11 sanctions should be affirmed. He did not abuse his discretion. His findings that Howard's claim construction was not frivolous is not clearly erroneous, and there's no clear error in his finding that Howard performed a pre-filing investigation, a sufficient pre-filing investigation. Did the judge rely at all on the two privileged documents? What the judge did was… Did he say yes or no? Yes. He did rely on them. He relied on them as both a check and to identify that there was nothing inconsistent in those documents. But as a check, what do you mean by that? Well, what he said was that the major declarations were a faithful summary. This was on page A5. A faithful summary of what is in those memoranda. So he went back and he used it as a check to the veracity of Mr. Moran. When the affidavit said I conducted the claim construction I thought was necessary, we all know it's a means plus function claim. All the lawyers know what the chart's supposed to look like. The judge is saying I looked at the secret documents and they confirm the generality that was in the original declaration, right? Correct. Okay, so now my question is how do we know that the judge is right? Because we can't see the two privileged documents. See, what's happened is that the judge has relied on non-evidence, something that's not of record. But the judge's findings are amply supported by the evidence that is of record. Because if we look at the evidence that wasn't of record. I understand that's the theory that I just, that wasn't even brief. The theory I was saying is he stubbed his toe by not deposing Maynard. But what I want to stick with is that there's a star chamber element to this case. We have a district court judge who, by your admission, is relying on privileged documents that are not of record. They're not of record here. For all we know, the two memoranda deal solely with the client meeting and with contingency fee analysis. Because that's the way Maynard described it. So how do we know? Could we, for example, sustain a district court decision where the district court judge said, in making my decision, I'm relying on what my wife told me this morning? When I say the court relied on it, the court's ultimate decision is amply supported by the other evidence on which the district court relied. So when I said the district court relied. The other evidence on which the district court relied has to be the three declarations, right? Correct. That's nothing else in the record. Correct. And what do those declarations say? We know that Mr. Maynard is a registered patent attorney. We know he studied the patents. We know he studied the file history. We know he conducted legal research on claim construction. We know that he construed the asserted claims. And there's no dispute, the only two limitations of Claim 1 are in means plus function form. We know he drafted a first memorandum in which he said he included a preliminary claim construction. And we know he drafted a second memorandum in which he amplified that claim construction, including citations to case law and the patent specification. Mr. Rickleach, we probably wouldn't be here if there was a claim chart somewhere that broke the claim down element by element, identified the structure and so forth, and then pointed to where that was found in the accused devices. Is there a reason that wasn't there? Two answers to that. First of all, a claim chart, this Court has made clear that a claim chart necessarily is not required. But second, remember that these memos were written a year before the complaint was filed. And they don't have, you're not going to find in these memos, a detailed claim chart for all the different defendants accused prior. You better not start telling us about what's in those declarations or you're going to find that you've waived your grip. I'm not going to. You better be very careful, Mr. Rickleach. Believe me, I understand that, Your Honor. But what Mr. Maynard said was that he included in there a claim construction. And he included citations to the record, and he included citations to the case law. Which, there is no dispute in this case that Howard's claim construction was wrong. There is no dispute. We were here before, not this entire panel, but some of the judges on this panel. Howard assumed early on that the patent claims that were asserted covered both embodiments, including the simplified exercise embodiment. Howard asserted in this case all the way up until the judge decided the summary judgment order and the claim construction. And even on appeal to this court, we spent nine pages of our brief arguing that the claim construction issue, that the word patient included normal, healthy individuals. When we, it's only what we lost. Mr. Rickleach, let me come back to the privilege issue. You rely very heavily in your brief on the 1983 Advisory Committee note to Rule 11 that says, you know, we don't want Rule 11 to be an occasion for breaching the work product privilege. You're familiar with the 1993 Advisory Committee note? Yes, Your Honor, but we try to be very careful. Let me refresh your recollection. In 1993, after several years of experience with Rule 11 motions, the Advisory Committee noted that good practice is for a district court to defer ruling on a Rule 11 motion until the case is hauled over, which is what happened here, because it says it would reduce the disruption created if a disclosure of attorney-client communication is needed to determine whether a violation occurred. So by 1993, the Advisory Committee recognizes that there may be cases in which a disclosure of attorney-client privilege is necessary to determine whether a violation occurred. And because it's deferred until after the trial is over, given the fact that you had some trial strategy in the memos that you were trying to protect, giving that up after the trial isn't so painful, right? I mean, you're on a balanced scale trying to find the right result. Well, there's a lot of other things in the memo. In memos of that nature, there are a lot of other things that decide the trial strategy. When the rubber hit the road and Maynard had to make certain he was really accurate, that is to say, in the third declaration, he described that second memo not as a claim construction or as an infringement analysis. He said it was a contingency fee analysis. So presumably your firm's makeup of what you were going to charge and how you were going to do it is embedded in that document, and I understand why you don't want that to be disclosed. But here we have a situation where you've agreed that the district court relied on stuff that's not in evidence. We haven't seen it. And once again, I'll say this again, the district court only relied on it to the extent that he was checking the veracity of what Mr. Maynard testified. He has an independent basis for his ruling. Assume that he didn't have it. I mean, what would happen if we were to hold that it was against a violation of law for the judge to rely on evidence not in record? That's a pretty simple proposition. You can't rely on what your wife told you. And to say the judge has got to go back and look at this case clean and decide whether the three declarations that are in the record are sufficient. And that's what he did. He didn't do that. He said they're sufficient because I have looked at the secret documents. He never said that. What he said is I've looked at the secret documents, and they are a faithful summary of what Mr. Maynard testified, and I don't see anything here to change my findings. And it didn't change the fact that Mr. Maynard testified in those declarations about all of the things that he did. And it didn't change the fact that the basic dispute between Polar and Dr. Tehrani was not over whether a means-plus-function analysis was ever done, but it was which means-plus-function analysis was correct.  which wasn't decided until two years after the complaint was decided. And once the court determined that patient doesn't include normal, healthy individuals, the court determined that Dr. Tehrani dedicated to the public her simplified embodiment. The court determined that, therefore, the means-plus-function limitation required the measured stroke volume, and there was no dispute between the parties. There was never any dispute that these devices didn't measure the patient's stroke volume. So this was, as the parties told Judge Carter at the very beginning of this case, this is a claim construction case. And so the parties disagreed about the claim construction, but those claim constructions, the competing claim constructions, were presented to the district court, and they were presented to the federal circuit. And, yes, the district court determined that Howard was wrong. And Mr. Maynard talked about all the steps that he went through, and the district court's determination was that the finding was that the patent specification gave Howard the reasonable expectation that a court would agree with its construction. And that finding is not clearly erroneous. The district court's determination was that Howard's claim construction was not of a frivolous variety and was not so frivolous as to warrant the issue of sanction. Well, your discounting is that, and we don't need to belabor it, but anybody reading the district court's opinion is going to realize the district court was very troubled by what had happened here. They were very troubled with your client in particular, because they'd come real close to saying he's a bad person. Or she. Okay, she, pardon me. But the court was clearly having difficult problems. And if one were to view the court finding the crutch or something that helped the court over this hurdle in a very, very difficult case, it was the two privileged documents. I look at them, and they give me comfort that these generalities that Mr. Maynard has stated, that they're true, right? So how can we be sure that the district court would reach the same decision on the Rule 11 issue if the privileged documents had not been given to the judge? Because what the district court's statements were. I hate to keep returning to this, but the district court's statements were. . . Can you be specific? Yes. The district court said about those that they were a faithful summary, and that's on page A-5. And then he said that the memoranda didn't supply any reason to change his findings, and that's at page A-10. So it's that use that really made them largely irrelevant. Mr. Maynard was in front of this district court. . . But saying no reason to change his findings, that means that he thinks that there's something in the detailed stuff in the memorandum that actually counters what your opposition has been saying. When he says, you know, I have no reason to change my mind. And the whole challenge, you know, in front of the judge was there's no specificity here. That was the same argument your adversary is making here. So when the judge says, well, I've got no reason to change my mind, there must be specificity in the document. Well, they understand that Polar's argument shifted throughout time. It started out, they said that Howry conducted no pre-filing investigation. That was the basis for their original motion. And it wasn't until much later in the day, probably their fourth brief, when they said, oh, Howry didn't pre-file. . . No, but what they said was Howry didn't perform any means plus function analysis. Well, that is frankly refuted by the evidence that's before the court, completely separate from the November memorandum. And that is that Mr. Maynard is a registered patent attorney. He had the patents. He had the prosecution history. He researched the case law. He did several iterations of analysis of that. And then Howry presented in those August and September letters, before the complaint was ever filed, a letter saying, look, here's what corresponds to these limitations, and presented a means plus function argument for two years. For two years in the case that was faithful all the way through and consistent. And then at the end of the case, two years into it, Judge Carter ruled that that was wrong. We brought it up on appeal. We argued for nine pages of our appellate brief. And this court said, yes, Judge Carter's correct. You, Howry, were wrong. But because we were wrong, Judge Carter recognized, doesn't make our claim construction frivolous. Nor did it make the infringement analysis that was performed frivolous. And he had some concerns about the fact that we only looked at two of the devices. We only looked at all the user manuals. We only looked at the article about how these devices work. We only looked at the patents that were marked on the products and how these work. And he was concerned about extrapolating that infringement analysis from just the two products to the 14. But there was no question, there's never been a dispute, that every one of those accused products used the OMCAL feature. It's in Polar's literature. It's available on the website. It's in the comparison chart that we identified. So there's no dispute. One of the interesting problems in this whole setting is that we don't know whether there have been instances in the past like this where after the trial is over, a district court judge is ordered to break the attorney-client privilege to determine whether or not a violation had occurred. Now, are you aware of any such instances? We were not able to find any, Your Honor. But let me caution you, it's not the attorney-client privilege. It's the work product community. So the issue was, and I see my time has expired. I just wanted to explain that the issue was not Final thought, Mr. Rookledge? Pardon? Final thought? The final thought was the issue wasn't details of what was done and what was not. The issue wasn't details of how the product worked. The dispute between the party from the very beginning all the way to the end of the case was on competing claim constructions. As it turns out, Howard was wrong on that claim construction, but the district court didn't abuse its discretion finding that that claim construction was frivolous. Thank you. Thank you, Mr. Rookledge. Mr. Moran, you have four and a half minutes. First, I'd like to strenuously dispute Mr. Rookledge's characterization that it was purely a claim construction issue below. But, Mr. Moran, we do have The dispute before the court below was more than just a claim construction. It was what structure in our devices, Polar's devices, that corresponds to the structure shown in the pack. And that goes to the crux of what's not here today, and that is, despite what we've said here, the best that this court can do is guess at what Mr. Manger found. If this court had found that a patient could encompass a healthy person, would we be here today? Yes, because we still do not know, despite what's been stated. Then we'd probably be here in the other direction, because Because you're still, what's missing here is the evidence of, other than guessing, Mr. Moran? We do not know. Mr. Moran? Yes, Your Honor. Thank you. The trouble I have is that claim construction is a very difficult process with a multitude of factors that influence it. You're absolutely right. And so with that kind of a complex legal matter to be determined, it's difficult, isn't it, to merely based on an outcome of claim construction charge someone with frivolousness? That's not what occurred in this case, Your Honor. The Rule 11 motions were put in before the summary judgment was even ruled upon. So it was not waiting until after the fact. Your theory from the get-go was that only an exercise in frivolity could have read the claims on a healthy person. On a claim construction issue, and also on the infringement issue, only an exercise in frivolity. I'm just supporting what I think the Chief Judge is saying, is from the get-go, when you said, well, Howie thinks this claim reads on a healthy person, that is frivolous, and boy, oh, boy, we got it. We're going to get a Rule 11. That's not the only thing, Your Honor. It did not resolve only on that issue. That's the only one that made it to the judge ruled on in the summary judgment. There was a whole second part of the case is that, wait a minute, the structure that's used in this device is nothing like the structure that's shown in the specification for these other functions. Well, and that would be a question of claim construction, too, wouldn't it? Because structure also encompasses equivalence of that structure, all within the claim construction function. And so, once again, we're into the complexity of the legal question that could have easily gone the other way. What you need to do, Mr. Moran, is listen to the end of my question and then respond. So let's start over again. Isn't this just a matter of claim construction? Doesn't that make your burden here very difficult? No, it is not a matter of just claim construction. There's two pieces to it. There is the claim construction. What is it? It's not before the Court today. The other half is, once you have that claim construction, complex as it is, as Your Honor noted, applying that claim construction to the devices. And once again, there's no evidence of whether or not that was actually performed in this case. In fact, with respect to at least one device, it wasn't performed at all. It simply looked at the feature, as Mr. Rookridge said earlier, shown in a marking chart. For the S810I product, Mr. Maynard looked only at a marking chart, which on its face said we have features. Features are not the structure that's incorporated into the claims by virtue of 112 Paragraph 6. And there's no evidence that Mr. Maynard actually did a 112 Paragraph 6 investigation prior to it. We can guess. So is the crux of your argument here, after all, the unavailability to us on appeal of those two work product documents? In part, Your Honor, it's our position that you cannot affirm without those documents, but you could reverse without those on the basis of the non-infringement analysis, or the infringement analysis not being made. I see that my time is up. If there's no further questions. Thank you, Mr. Moran.